IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Julie Thompson Molby,<br><br>    Plaintiff,<br><br>vs.<br><br>Michael J. Astrue, Commissioner<br>of Social Security,<br><br>    Defendant. | No. CV 07-681-TUC-RCC (CRP)<br><br>**REPORT AND RECOMMENDATION** |

Plaintiff brought this action pursuant to 42 U.S.C. §§ 405(g) and 1383(c)(3), seeking judicial review of a final decision by the Commissioner of Social Security ("Commissioner"). This case presents three issues on appeal: (1) whether the Administrative Law Judge ("ALJ") erred in rejecting the opinion of two treating physicians; (2) whether the ALJ improperly determined Plaintiff was not entirely credible; and (3) whether the ALJ erred in determining Plaintiff could do unskilled work when the ALJ did not consult a vocational expert. Based on the pleadings of the parties and the administrative record submitted to the Court, the Magistrate Judge recommends that the District Court, after its independent review, DENY Plaintiff's Motion for Summary Judgment (Doc 14) and GRANT Defendant's Cross-Motion for Summary Judgment (Doc 16). Substantial evidence supports the ALJ's rejection of the treating physicians' opinions, the finding that Plaintiff was not entirely credible and the ALJ's determination that Plaintiff could perform unskilled work at all exertional levels.

## Procedural History

Plaintiff filed applications for disability insurance benefits ("DIB") and supplemental security income ("SSI") in the summer of 2005. (Administrative Record ("AR") 15, 55-59, 300-302). Plaintiff alleged disability from February 1, 2002 to present resulting from depression and bipolar disorder. (AR 15). After Plaintiff's applications were denied, she appealed the denials and appeared and testified before ALJ Norman R. Buls in December 2006. (AR 15, 323-345). Subsequent to the hearing, the ALJ found Plaintiff was not disabled at step five because she could perform a significant number of unskilled jobs. (AR 12-24). The Appeals Council denied Plaintiff's request to review the ALJ's decision and Plaintiff subsequently filed the pending federal action. (Doc 1).

## Factual History

Plaintiff was born on January 13, 1963, making her 42 years of age at the time she filed her applications for DIB and SSI. (AR 55). Plaintiff's work history is sporadic. Plaintiff earned just over $1200 in 1982 and $3000 in 1983. (AR 53). After not working in 1984, Plaintiff shows a consistent work history with gradually increasing or stable income from 1985 through 1993. (AR 53-54). In 1994, Plaintiff earned just under $8,000 after earning over $17,000 the prior year. (AR 54). In 1995 and 1996, Plaintiff's income stabilized between $13,000 and $10,000. (AR 54). Since that point, Plaintiff earned $9500 in 2000, but has not earned more than $3200 in any other year. (AR 54).

Plaintiff has a history of alcohol abuse. (AR 319, 123, 124, 264). Plaintiff's father reported that Plaintiff's alcohol consumption increased after her son was killed in an accident where he fell from a roof in 1997. (AR 319, 48). In September 2003, Plaintiff threatened to drown herself in a river outside her father's house to "join her dead son." (AR 315-320). At that time Plaintiff had an upcoming court date for driving under the influence. (AR 319). In November 2004, Plaintiff attempted suicide while intoxicated after fighting with her boyfriend. (AR 123). Plaintiff incurred "multiple, very superficial lacerations" of which "none of [the lacerations] broke[] through the dermal layer" and "none require[d] suturing." (AR 126-127).

Plaintiff was prescribed an alcohol detoxification program and Prozac. (AR 119). Plaintiff was diagnosed with major depression and alcohol dependence. (AR 120). At that point, Plaintiff made plans to move to Tucson to live with her brother and his family. (AR 117).

Once in Arizona, Plaintiff sought counseling and assistance from La Frontera Center. (AR 249-278). Plaintiff was initially assessed with a Global Assessment of Functioning ("GAF") of 55 in April 2005. (AR 277). The GAF is a 100-point scale that measures a person's overall level of psychological, social and occupational functioning on a hypothetical continuum. *See* American Psychiatric Ass'n, *Diagnostic & Statistical Manual of Mental Disorders ("DSM-IV")*, at 32, 34 (4th ed.2000). Lower numbers on the GAF scale represent more severe mental limitations. A rating of 41-50 indicates serious symptoms; a rating of 51-60 indicates moderate symptoms; a rating of 61-70 indicates the presence of some mild psychological symptoms; and a rating of 71-80 indicates some transient mild symptoms. Plaintiff's GAF score rose consistently during her treatment at La Frontera. In June 2005 Plaintiff's GAF was 60; in August 2005 it was 60; in October 2005 it was 65 and then 67 at a second appointment and 68 at a third appointment; it was 72 at the end of November 2005; and 77 in January 2006. (AR 276, 272, 264, 260, 259, 254, 249).

In progress notes from Plaintiff's visits to La Frontera Plaintiff reported and staff observed that Plaintiff was functional and improving in her mental health. (AR 249-278). Staff at La Frontera stated Plaintiff did not show any symptoms of depression and appeared to be staying busy in June 2005. (AR 276). In multiple records, staff at La Frontera described Plaintiff as "functioning well" and her mental health as continually improving. (AR 271, 269, 268, 264, 263, 260, 259, 252, 249). Staff also noted Plaintiff was "well groomed and well dressed." (AR 271). While Plaintiff described being "very fearful and feel[ing] overwhelmed with thought of going back to job situation," staff noted she "continues to be drug-free and sober." (AR 272). Plaintiff did state she "[e]xperiences much guilt over abusing substances throughout her children's upbringing." (AR 264). However, Plaintiff feels she came to terms with her son's death and she has re-established contact with her daughter. (AR 264). Plaintiff

also stated that she has a good support network. (AR 264). In January 2006, Plaintiff met with staff at La Frontera for a final progress check. (AR 249). Plaintiff discussed her future plans and goals and staff noted Plaintiff did not need therapy for her moods or feelings of guilt. (AR 249).

Contrary to the progress notes from La Frontera, in Plaintiff's statements to the Social Security Administration ("SSA") she described herself as disabled, depressed, and anxious. (AR 41). She stated that she "feel[s] doomed [and] doesn't want to get out of bed." (AR 41). She also stated in November 2005 that she is "incapacitated by depression." (AR 48).

Plaintiff's support network includes her brother with whom she lives. (AR 70). Her daily routines include reading, watching television, interacting with the people in her brother's house, going to church on Sundays, taking a class from Pima Community College and acting as a caregiver to a child in the house. (AR 70, 74). At the administrative hearing, Plaintiff testified that she would likely receive a "B" in the four credit Spanish class she was completing. (AR 334). While Plaintiff had to drop the second class she was taking that semester, Plaintiff did attend her Spanish class once a week for three and a half hours, after which Plaintiff would come home and do her homework for the following week. (AR 331, 332, 334). Plaintiff does go to church on Sundays but describes "chickening out" and not going to lunch with ladies from church after services. (AR 335). Plaintiff also tries to complete her grocery shopping during the slowest times of the day. (AR 335).

Plaintiff's brother describes Plaintiff helping around the house by cleaning the pool and watching a baby at the house. (AR 90). Although, Plaintiff's brother states Plaintiff sometimes needs reminders to take care of her personal needs, such as showering and to remember to help clean the pool. (AR 89, 90). Her brother also describes Plaintiff as unmotivated; she does, however, go to church on most Sundays. (AR 91, 92). Overall, Plaintiff's brother remarks that Plaintiff "is not bubbly like she was in the past." (AR 95). After the administrative hearing, Plaintiff's sister and a friend submitted statements describing Plaintiff as not being functional because "she cannot always remember what she is supposed to do" and can only "concentrate

on only one thing at a time and even then it is hard for her to complete a task." (AR 311, 312). Plaintiff's sister states Plaintiff is "extremely fragile." (AR 311). Plaintiff's friend who gives Plaintiff rides to church describes Plaintiff as "very fragile" and "very depressed." (AR 312). He stated he encouraged Plaintiff to move into a motor-home for some independence but that it seemed "too much" for Plaintiff and she "moved back with family where she has daily interaction [and] encouragement." (AR 312-313).

The ALJ rejected the opinions of Plaintiff's two treating physicians. Drs. Weston and Goldwasser both treated Plaintiff at La Frontera and completed paperwork offering opinions for her social security disability claim. (AR 154-158, 174-176). Dr. Weston completed a Medical Source Statement ("MSS") on September 2, 2005, after one patient visit with Plaintiff. There is no evidence in the record that Dr. Weston conducted any mental health examinations to complete the MSS, but rather, relied on Plaintiff's responses to the questions on the MSS form. (AR 154-158). In reviewing the MSS completed by Dr. Weston, a government reviewing physician noted that the form reflected answers Plaintiff gave Dr. Weston or contained only conclusory statements from Dr. Weston. (AR 133).

Dr. Weston found Plaintiff suffered from Bipolar Mood Disorder and Attention Deficit Hyperactivity Disorder ("ADHD"). (AR 154). Based on Plaintiff's responses to the questions on the MSS, Dr. Weston found Plaintiff had six markedly limited functions and nine moderately limited functions and was therefore, disabled. (AR 154-158). The progress notes and the treatment provided to Plaintiff at La Frontera do not support the severe limitations identified by Dr. Weston in the MSS.

In July 2005, Dr. Goldwasser completed a Seriously Mentally Ill Determination ("SMI") Form and found Plaintiff met the standard for SMI based on a diagnosis of Bipolar Mood Disorder. (AR 174-176). Dr. Goldwasser noted that Plaintiff depended on family for her basic needs and he checked the box stating Plaintiff experienced severe disruption of daily life due to frequent thoughts of death, suicide, or self-harm. (AR 174). Dr. Goldwasser also checked a box stating Plaintiff was unable to work, attend school, or meet other developmentally

appropriate responsibilities. (AR 175). In his notes on the SMI Form, Dr. Goldwasser wrote Plaintiff cannot work and does not have social support. (AR 175).

The record shows Plaintiff does have the support of her family, does attend school and does well in the class she takes. It also shows Plaintiff does go out into the community to shop and go to church with regularity, and does interact with the people living in her brother's house. The progress notes from La Frontera showing Plaintiff was functional and continually improving also do not support Dr. Goldwasser's evaluation.

The SSA asked Dr. Campbell to evaluate Plaintiff. (AR 196-201). In her interview with Dr. Campbell, Plaintiff stated that she has struggled with depression and that she is having trouble "getting stuff done at home." (AR 196). She also stated she has anxiety going into stores and has walked out of Walmart because she was overwhelmed. (AR 196). Plaintiff told Dr. Campbell she only buys a few things in grocery stores to limit her time in the store but she can go out to eat and shop at smaller stores. (AR 197).

Dr. Campbell observed a 42-year-old female of average height and weight who was clean in appearance and casually dressed. (AR 197). She arrived at her appointment by herself and on time; her eye contact was good and attention span was adequate. (AR 197). Dr. Campbell found her friendly and cooperative. (AR 198). Her thought processes were logical, clear, and linear. (AR 198). She was able to provide a reasonable explanation for common cliches and she was orientated to person, place, time and situation. She could spell "world" backwards, count in serial sevens with no mistakes, repeat a phrase correctly, recall presidents and details about her own life, and remember three words after the passage of time. (AR 198). She told Dr. Campbell that she does not think of suicide, that she takes classes at Pima Community College, swims three times a week, takes care of the pool, birdwatches, watches television, reads, and completes laundry and dishes. (AR 198). Dr. Campbell opined Plaintiff was not disabled, that she was able to make adequate judgments and simple and detailed work decisions and that while she has major depressive disorder, it is mild and she is getting treatment. (AR 199).

Dr. Estes, a government reviewing physician, examined Plaintiff's record and determined Plaintiff had some moderate limitations in her ability to remember and understand detailed instructions, carry out those instructions, maintain concentration for extended periods of time, work in coordination with others, complete a normal workday and workweek, interact appropriately with the public and get along with coworkers. (AR 133-134). Dr. Estes determined that given her limitations, Plaintiff could respond appropriately to simple instructions and do simple tasks in a setting of low social contact. (AR 136). The ALJ rejected Dr. Estes opinion insofar as it limited Plaintiff's social contact because the ALJ determined such a limitation was not supported by the evidence from La Frontera. (AR 22).

In reaching a decision that Plaintiff was not disabled at step five in the evaluation process, the ALJ rejected the opinions of Plaintiff's two treating physicians, determined Plaintiff was not fully credible, rejected the work limitations identified by the reviewing physician, and incorporated the examining doctor's report. Based on the examining doctor's report and the other evidence in the record listed above, the ALJ determined based on the Medical-Vocational Guidelines that Plaintiff could perform unskilled work at all exertional levels.

Plaintiff alleges it was error for the ALJ to (1) reject the opinions of the two treating physicians; (2) find Plaintiff not fully credible; and (3) determine Plaintiff could do unskilled work at all exertional levels when the ALJ did not consult a vocational expert. The Commissioner responds that the ALJ's determinations are supported by substantial evidence in the record and free of legal error.

## **Standard of Review**

The Commissioner employs a five-step sequential process to evaluate DIB claims. 20 C.F.R. §§ 404.1520, 416.920; *see also Heckler v. Campbell,* 461 U.S. 458, 460-462 (1983). The claimant bears the burden in steps one through four. To establish disability the claimant must show she (1) is not working; (2) has a severe physical or mental impairment; (3) the impairment meets or equals the requirements of a listed impairment; or (4) claimant's residual functional capacity ("RFC") precludes her from performing her past work. *Id.* At step five, the

Commissioner bears the burden of showing that the claimant has the RFC to perform other work that exists in substantial numbers in the national economy. *Hoopai v. Astrue*, 499 F.3d 1071, 1074-1075 (9th Cir.2007) (internal citations omitted). If the Commissioner conclusively finds the claimant "disabled" or "not disabled" at any point in the five-step process, he does not proceed to the next step. *Id.*

Claimant in this case was denied at step five of the evaluation process. This step five determination is made on the basis of four factors: the claimant's RFC, age, education and work experience. *Id.* "The Commissioner can meet this burden through the testimony of a vocational expert or by reference to the Medical Vocational Guidelines [("guidelines" "grid)]." *Thomas v. Barnhart*, 278 F.3d 947, 955 (9th Cir.2002).

The findings of the Commissioner are meant to be conclusive. 42 U.S.C. §§ 405(g), 1383(c)(3). The court may overturn the decision to deny benefits only "when the ALJ's findings are based on legal error or are not supported by substantial evidence in the record as a whole." *Aukland v. Massanari*, 257 F.3d 1033, 1035 (9th Cir.2001). As set forth in 42 U.S.C. § 405(g), "[t]he findings of the Secretary as to any fact, if supported by substantial evidence, shall be conclusive . . ." Substantial evidence is "more than a scintilla but less than a preponderance." *Tackett v. Apfel*, 180 F.3d 1094, 1098 (9th Cir.1999) (internal quotation marks and citations omitted). "[I]f the evidence can support either outcome, the court may not substitute its judgment for that of the ALJ." *Matney v. Sullivan,* 981 F.2d 1016, 1019 (9th Cir.1992) (internal citations omitted). The Commissioner's decision, however, "cannot be affirmed simply by isolating a specific quantum of supporting evidence. *Sousa v. Callahan*, 143 F.3d 1240, 1243 (9th Cir.1998) (internal citations omitted). Reviewing courts must consider the evidence that supports as well as detracts from the Commissioner's conclusion. *Day v. Weinberger*, 522 F.2d 1154, 1156 (9th Cir.1975).

The ALJ is responsible for resolving conflicts in testimony, determining credibility, and resolving ambiguities. *Andrews v. Shalala*, 53 F.3d 1035, 1039 (9th Cir.1995) (internal citations omitted). "When the evidence before the ALJ is subject to more than one rational

- 8 -

interpretation, [the court] must defer to the ALJ's conclusion." *Batson v. Comm'r of Soc. Sec. Admin.,* 359 F.3d 1190, 1198 (9th Cir.2004). This is so because "[t]he [ALJ] and not the reviewing court must resolve conflicts in evidence, and if the evidence can support either outcome, the court may not substitute its judgment for that of the ALJ." *Matney v. Sullivan,* 981 F.2d 1016, 1019 (9th Cir.1992) (internal citations omitted).

**ALJ's Rejection of Treating Physicians' Opinions Was Not Error**

Plaintiff asserts the ALJ erred in rejecting the opinions of Drs. Weston and Goldwasser both of whom treated Plaintiff at La Frontera. Dr. Weston opined in a MSS after meeting with Plaintiff once that Plaintiff had markedly and moderately limited functions which resulted in disability for twelve months or longer. Dr. Goldwasser completed an SMI form after what appears to be one visit with Plaintiff in which he opined Plaintiff is disabled based on a diagnosis of Bipolar Mood Disorder. The Commissioner responds that the ALJ's rejection of these two opinions was proper because substantial evidence including a report by examining physician, Dr. Campbell, supports the ALJ's rejection and the ALJ gave specific and legitimate reasons for rejecting the opinions.

If a treating physician's opinion is not "well-supported" or it is inconsistent with the other substantial evidence in the record, the Commissioner considers specified factors in determining the weight it will be given. Those factors include the "[l]ength of the treatment relationship and the frequency of examination" by the treating physician; and the "nature and extent of the treatment relationship" between the patient and the treating physician. 20 C.F.R. § 404.1527(d)(2)(i)-(ii). Additional factors relevant to evaluating any medical opinion, not limited to the opinion of the treating physician, include the amount of relevant evidence that supports the opinion and the quality of the explanation provided; the consistency of the medical opinion with the record as a whole; the specialty of the physician providing the opinion; and "[o]ther factors" such as the degree of understanding a physician has of the Administration's "disability programs" and their evidentiary requirements' and the degree of his or her familiarity with other information in the record. 20 C.F.R. § 404.1527(d)(3)-(6). If a treating or examining doctor's opinion is contradicted by another doctor's opinion, an ALJ may reject it by providing

- 9 -

specific and legitimate reasons that are supported by substantial evidence. *Tommasetti v. Astrue,* 533 F.3d 1035, 1041 (9th Cir.2008). In *Tommasetti*, the ALJ did not err in rejecting a medical opinion when the physician relied on the plaintiff's self-assessment with little independent analysis or diagnosis. 533 F.3d at 1041.

In the case before this Court, the ALJ did not give any weight to Dr. Weston's MSS assessment because "it appear[ed] to be based solely on the claimant's subjective reports", Dr. Weston did not conduct any mental examinations, and her opinion was not supported by the medical evidence and other evidence in the record. Dr. Weston met with Plaintiff one time prior to completing the MSS and it does appear that Dr. Weston relied on Plaintiff's responses to the questions on the MSS form to complete it, even though the form specifically directs the physician to not indicate what the patient states she can do but rather what the physician, in her best judgment, feels Plaintiff can do based upon substantiated findings. Dr. Weston did not provide substantiated findings or any evidence that she had completed a mental examination of Plaintiff. Rather, Dr. Weston provided quotes from Plaintiff or general descriptions from Plaintiff about her abilities. For instance, Dr. Weston checked the box that Plaintiff was markedly limited in the ability to complete a normal workday and workweek and then supported that assessment with Plaintiff's quote, "'anxiety would overwhelm me' would want to constantly be elsewhere, home where safe, often told people in past that 'sick.'" On another question, Dr. Weston checked the box that Plaintiff was markedly limited in the ability to set realistic goals or make plans independently of others based on Plaintiff's statement, "I don't even know what that is about."

Plaintiff contends in her response to the Commissioner's Motion for Summary Judgment that a doctor's use of quotes from a plaintiff to illustrate and support her opinion about a plaintiff's limitations is not reason to disregard the opinion. While Plaintiff's self-report of limitations must play a role in a physician's assessment of a patient, Plaintiff's self-report appears to be the only evidence Dr. Weston used in making her assessment on the MSS. The Ninth Circuit has rejected a doctor's assessment based on claimant's subjective complaints. *Bayliss v. Barnhart*, 427 F.3d 1211, 1217 (9th Cir.2005). Dr. Weston did not support her

conclusions with any other medical evidence and the soap notes from the record do not support her conclusion that Plaintiff suffered serious limitations.

The other evidence in the record also does not support the severity of limitations identified by Dr. Weston on the MSS form. Dr. Weston found Plaintiff suffered from six markedly limited functions and nine moderately limited functions. Included in those limitations were the ability to concentrate, set goals, remember locations and work-like procedures, maintain a schedule, and make decisions. The record does not support Dr. Weston's opinion regarding the severity of these limitations. Plaintiff maintains a daily and weekly schedule in which she attends school regularly and was earning a B in her Spanish class, goes to church with regularity, swims and cleans the pool three times a week, interacts with the people in her brother's house, acts as a caregiver to a child in the house, and does some limited shopping.

Substantial evidence supports the ALJ's rejection of Dr. Weston's opinion. Furthermore, Plaintiff's treatment records from La Frontera show she is functioning on an increasingly high level, regularly attends her appointments, appears well-dressed and groomed, attends the appointments without assistance from others, and is functioning well. While Plaintiff continues to have some symptoms, she consistently reported feeling and functioning well when meeting with La Frontera staff. The ALJ did not err in rejecting the opinion of Dr. Weston on the MSS form and the ALJ provided specific and legitimate reasons for rejecting that opinion.

The ALJ also rejected Dr. Goldwasser's opinion that Plaintiff was severely mentally ill. Dr. Goldwasser opined on an SMI form that Plaintiff suffered severe disruption of daily life due to frequent thoughts of death, suicide, or self-harm. Dr. Goldwasser also checked the box on the form stating Plaintiff was unable to work, attend school, or meet other developmentally appropriate responsibilities and that Plaintiff does not have social support.

The ALJ did not err in rejecting Dr. Goldwasser's opinion because it is not supported by the record and the ALJ gave specific and legitimate reasons for rejecting it. Contrary to Dr. Goldwasser's opinion that Plaintiff could not attend school, Plaintiff does attend school regularly and was doing well in the Spanish class she was taking at the time of the administrative hearing. Dr. Goldwasser's opinion that Plaintiff thinks of suicide frequently is

1  also contradicted by other evidence in the record. Plaintiff stated to Dr. Campbell that she does
2  not think of suicide and her medical records from La Frontera support that Plaintiff is stable
3  with an increasing GAF and that she is not focused on suicide. The record also contradicts Dr.
4  Goldwasser's opinion that Plaintiff lacks social support. Plaintiff has a supportive social
5  network. Her brother, sister, and a friend all wrote letters in support of her application for
6  disability. Plaintiff lives with her brother and his family and she interacts with the people in that
7  house, she is entrusted to watch a baby with some regularity, she cleans the pool three times a
8  week, she does some limited shopping and attends church regularly. Substantial evidence in
9  the record supports the ALJ's rejection of Dr. Goldwasser's opinion on the SMI form that
10 Plaintiff is disabled from serious mental illness.

11   Furthermore, in rejecting the opinions of the treating physicians, the ALJ relied on the
12 opinion of examining physician, Dr. Campbell. Dr. Campbell was asked to evaluate Plaintiff
13 to aid in the determination of disability. Dr. Campbell interviewed Plaintiff and completed a
14 thorough mental examination of Plaintiff. While Plaintiff opined to Dr. Campbell that she had
15 anxiety going into stores, struggled with depression and was having trouble completing tasks
16 at home, Dr. Campbell observed a woman who he opined was not disabled. Plaintiff had good
17 eye contact and adequate attention span as well as thought processes that were logical, clear,
18 and linear. Plaintiff was able to explain common cliches, orientate to person, place, time and
19 situation. She was also able to spell "world" backward, count in serial sevens with no mistakes,
20 recall presidents and details about her own life and remember three words after the passage of
21 time.

22   Plaintiff contends Dr. Campbell's opinion, like the opinions of Dr. Weston and Dr.
23 Goldwasser, was based on Plaintiff's statements. This is incorrect. Dr. Campbell completed
24 a thorough mental examination of Plaintiff in which he tested Plaintiff's thought processes,
25 attention span, memory, as well as interviewed Plaintiff.

26   Given the evidence in the record including the treatment records from La Frontera, the
27 short relationship Plaintiff had with her treating physicians prior to them opining about her
28 disability, Plaintiff's daily and weekly activities, and Dr. Campbell's thorough examination of

- 12 -

1 Plaintiff and conclusion that Plaintiff was not disabled, the ALJ's decision to reject the treating
2 physicians' opinions is supported by substantial evidence in the record and was not in error.

### ALJ Did Not Err in Finding Plaintiff Not Entirely Credible

The ALJ found Plaintiff's complaints and statements not fully credible. Plaintiff alleges this is in error because the record does not show that she was malingering. The Commissioner responds the ALJ properly determined Plaintiff was not entirely credible based on La Frontera treatment records that showed Plaintiff upbeat and functioning very well, Dr. Campbell's observations and testing of Plaintiff showing logical thought processes with memory and adequate concentration, Plaintiff's successful treatment for her depressive symptoms, and Plaintiff's daily activities.

In general, "questions of credibility and resolution of conflicts in the testimony are functions solely for [the ALJ]." *Parra v. Astrue,* 481 F.3d 742, 750 (9th Cir.2007) (internal quotation marks omitted). However, "[w]hile an ALJ may certainly find testimony not credible and disregard it ... [the court] cannot affirm such a determination unless it is supported by specific findings and reasoning." *Robbins v. Soc. Sec. Admin.,* 466 F.3d 880, 884-85 (9th Cir.2006) (internal citations omitted). "To determine whether a claimant's testimony regarding subjective pain or symptoms is credible, an ALJ must engage in a two-step analysis." *Lingenfelter v. Astrue,* 504 F.3d 1028, 1035-36 (9th Cir.2007). "First, the ALJ must determine whether the claimant has presented objective medical evidence of an underlying impairment 'which could reasonably be expected to produce the pain or other symptoms alleged .'" *Id.* at 1036 (*quoting Bunnell v. Sullivan,* 947 F.2d 341, 344 (9th Cir.1991)). Second, if "there is no affirmative evidence of malingering, the ALJ can reject the claimant's testimony about the severity of her symptoms only by offering specific, clear and convincing reasons for doing so." *Tommasetti,* 533 F.3d at 1039 (internal quotation marks omitted).

In this case, the ALJ found Plaintiff suffered from some severe mental impairments but that Plaintiff's testimony about her symptoms and alleged functional limitations arising from those impairments was out of proportion to the objective clinical findings and inconsistent with the evidence in the record. The ALJ pointed out that Plaintiff's symptoms were not supported

- 13 -

by the thorough mental examination of Dr. Campbell. The symptoms and alleged limitations were also not supported by the longitudinal treatment records from La Frontera or by Plaintiff's daily and weekly activities.

An ALJ must properly support a credibility finding through substantial evidence in the record and the finding must be sufficiently specific to ensure a reviewing court that the ALJ did not arbitrarily reject a claimant's subjective testimony. *Bunnell v. Sullivan*, 947 F.2d 341, 345-346 (9th Cir.1995) (internal citations omitted). In determining credibility a plaintiff's treatment history and medication usage are factors in determining credibility. 20 C.F.R. § 404.1529(c)(3)(iv),(v). A favorable response to conservative treatment undermines the claimant's reports regarding the disabling nature of her symptoms. *Tommasetti*, 533 F.3d at 1039. Impairments that can be controlled effectively with medication are not disabling for the purpose of determining eligibility for SSI benefits." *Warre v. Comm'r of Soc. Sec.*, 439 F.3d 1001, 1006 (9th Cir.2006). Furthermore, a plaintiff's ability to interact with family members and daily activities that include household chores and caring for young children undermine claims of disability. *Burch v. Barnhart*, 400 F.3d 676, 681 (9th Cir.2005); *Rollins v. Massanari*, 261 F.3d 853, 857 (9th Cir.2001).

In this case, the ALJ provided clear and convincing reasons for rejecting Plaintiff's testimony about the disabling nature of her symptoms. The ALJ concluded Plaintiff's claim about the severity of her symptoms was out of proportion to the objective findings and was inconsistent with the level of functioning she described to her treating doctors and therapists as well as inconsistent with the substantial evidence in the record. For instance, Plaintiff told Dr. Campbell, the examining physician, that she did not want to interact with people and could not work because of concentration and organizational problems. Yet, Dr. Campbell in his mental examination of Plaintiff, found Plaintiff had adequate attention, intact memory, and logical thought processing. She was able to spell "world" backwards and count in serial sevens with no mistakes. Plaintiff also maintained eye contact during the interview with Dr. Campbell and was friendly and cooperative and Plaintiff has noted that she interacts with family members, attends church, gets a ride to school from a friend, and does some limited shopping.

1       Furthermore, the La Frontera treatment records show the symptoms Plaintiff did have
2 quickly improved with medication and treatment.  Records reflect Plaintiff was "functioning
3 well" and feeling good shortly after beginning treatment at La Frontera.  Plaintiff was initially
4 assessed with a GAF of 55 in April 2005.  Plaintiff's GAF score rose consistently during her
5 treatment at La Frontera.  In June 2005 Plaintiff's GAF was 60; in August 2005 it was 60; in
6 October 2005 it was 65 and then 67 at a second appointment and 68 at a third appointment; it
7 was 72 at the end of November 2005; and 77 in January 2006.

8       Plaintiff also maintained daily and weekly routines.  She did chores around the house
9 including cleaning the pool three times a week and doing laundry and dishes albeit after they
10 stacked up.  Plaintiff attended a four-credit Spanish class once a week and she testified she was
11 earning a "B" grade.  The record also shows Plaintiff states she was the caregiver for a child in
12 her brother's house and that she interacted daily with the other people in her brother's house.
13 Plaintiff also testified that she reads and watches television daily and that while she avoids
14 going to the grocery store at busy times, she does go to the store and shops at smaller stores as
15 well.  Plaintiff also attends church regularly on Sundays.

16       As identified by the ALJ, Dr. Campbell's mental examination of Plaintiff, the
17 longitudinal treatment records from La Frontera, and Plaintiff's daily and weekly activities all
18 weigh against finding her entirely credible with regard to her disability.

19       Plaintiff also claims that lay witness statements, one submitted for the hearing and two
20 submitted subsequent to the hearing support Plaintiff's credibility regarding her symptoms and
21 limitations as well as her treating physicians' assessments of her disability and limitations.  The
22 three lay witness statements describe Plaintiff as someone who has a regular daily routine, cares
23 for a child, cleans the pool, does some limited shopping, goes to church with regularity but
24 needs reminding to accomplish some tasks and does not live alone.

25       The lay witness testimony does support Plaintiff's claim that she has some mental
26 limitations and suffers from depression.  This is not inconsistent with the ALJ's findings.  The
27 ALJ found Plaintiff not entirely credible because the evidence did not support the severity of
28 limitations Plaintiff claimed.  The ALJ, however, did acknowledge that Plaintiff has some

- 15 -

mental impairments that are severe. The lay witness statements do not outweigh the other substantial evidence in the record nor do they show that the ALJ erred in discounting the treating physicians' opinions and finding Plaintiff not entirely credible. The La Frontera treatment records indicating Plaintiff was doing well and improving, the extent of Plaintiff's daily and weekly activities, and Dr. Campbell's thorough examination are substantial evidence properly relied upon by the ALJ to reach his conclusions.

**ALJ Did Not Err in Relying on the Grid to Find Plaintiff Can Perform Unskilled Work**

Plaintiff challenges the ALJ's use of the guidelines at step five without consulting a vocational expert ("VE"), arguing the guidelines do not take into account Plaintiff's significant non-exertional limitations resulting from her mental impairments. The Commissioner responds that Plaintiff's mental impairments are not so severe that they created significant non-exertional limitations and thus, use of the guidelines was permissible.

Claimant in this case was denied at step five of the evaluation process. This step five determination is made on the basis of four factors: the claimant's RFC, age, education and work experience. *Id*. The Commissioner can make a step five determination by either using " the testimony of a vocational expert or by reference to the Medical Vocational Guidelines [("guidelines" "grid)]." *Thomas v. Barnhart*, 278 F.3d 947, 955 (9th Cir.2002). The guidelines "consist of a matrix of [the four factors including claimant's RFC, age, work experience and education] and set forth rules that identify whether jobs requiring a specific combination of these factors exist in significant numbers in the national economy." *Heckler*, 461 U.S. at 461-462. "The [Social Security Administration's] need for efficiency justifies use of the grids at step five where they *completely and accurately* represent a claimant's limitations. In other words, a claimant *must* be able to perform the *full range* of jobs in a given category, i.e., sedentary work, light work, or medium work." *Tackett,* 180 F.3d at 1101 (internal citation omitted and second emphasis added).

The grids cannot be used if they "fail accurately to describe a claimant's particular limitations." *Jones v. Heckler,* 760 F.2d 993, 998 (9th Cir.1985). An alleged non-exertional

limitation, however, "does not automatically preclude application of the grids. The ALJ should first determine if a claimant's non-exertional limitations significantly limit the range of work permitted by his exertional limitations." *Tackett,* 180 F.3d at 1102 (emphasis added). "A vocational expert is required only when there are significant and 'sufficiently severe' non-exertional limitations not accounted for in the grid." *Hoopai,* 499 F.3d at 1076.

In this case, the ALJ found Plaintiff had severe impairments of depression and anxiety at step two of the evaluation process. Based on the evidence in the record including the opinions of Drs. Campbell and Estes, the ALJ found Plaintiff had a mild restriction of activities of daily living; no difficulties with social functioning; and moderate difficulties maintaining concentration, persistence, or pace. At step five, the ALJ assessed a non-exertional limitation that limited Plaintiff to unskilled work. Based on Plaintiff's non-exertional limitation and no exertional limitations, the ALJ determined Plaintiff had the RFC to do unskilled work at all exertional levels. RFC is the most a claimant can do in light of the limitations caused by her impairments. 20 C.F.R. § 416.945. Unskilled work "is work which needs little or no judgment to do simple duties that can be learned on the job in a short period of time." 20 C.F.R. § 416.968(a).

Plaintiff contends the record supports a finding of more limitations than those identified by the ALJ and that Plaintiff had non-exertional limitations sufficiently severe to require the use of a vocational expert. Thus, Plaintiff maintains that the ALJ erred in using the guidelines to determine Plaintiff could perform unskilled work at any exertional level. Plaintiff supports her argument with the opinions of treating physicians, Drs. Weston and Goldwasser.

The ALJ in this case rejected the opinions of the two treating physicians in which the physicians opined that Plaintiff suffered serious mental limitations. As was analyzed supra, the ALJ did not err in making that determination and his decision was supported by substantial evidence in the record. Dr. Estes, the SSA's reviewing psychiatrist, opined that based on his review of the record, including Dr. Campbell's recent exam and report, Plaintiff was able to perform simple tasks and instructions in a setting of low social contact. Dr. Estes found

- 17 -

Plaintiff had some moderate limitations in her ability to remember and understand detailed instructions, carry out those instructions, maintain concentration for extended periods of time, work in coordination with others, complete a normal workday and workweek, interact appropriately with the public and get along with coworkers. The ALJ considered these limitations but discounted Dr. Estes' limitation to a work environment of low social contact because it was not supported by other evidence in the record.

Based on all the evidence in the record the ALJ found Plaintiff could perform all levels of unskilled work. The Court finds substantial evidence in the record supports the ALJ's conclusion that Plaintiff's non-exertional limitations are not sufficiently severe such that they significantly affect her ability to perform all levels of unskilled work.

The longitudinal treatment records from La Frontera show Plaintiff reported functioning well and staff observed her doing well and continuing to improve. Plaintiff's daily and weekly activities also support a finding the Plaintiff's limitations are not sufficiently severe as to require testimony of a VE. Plaintiff maintains a daily routine, acts as a caregiver, cleans the pool at her brother's home, interacts with people living in the home, attends church regularly, does limited work around the house and goes shopping. Furthermore, the thorough mental examination completed by Dr. Campbell supports the ALJ's decision to use the guidelines. Dr. Campbell found Plaintiff had good eye contact and adequate attention span as well as thought processes that were logical, clear, and linear. Plaintiff was able to explain common cliches, orientate to person, place, time and situation. She was also able to spell "world" backwards, count in serial sevens with no mistakes, recall presidents and details about her own life and remember three words after the passage of time.

Plaintiff's nonexertional impairments are not sufficiently severe to prohibit the ALJ's reliance on the grids without the assistance of a VE. Accordingly, this Court finds no error of law.

**Recommendation**

For the foregoing reasons, the Magistrate Judge recommends that the District Court, after its independent review:

1. DENY Plaintiff's Motion for Summary Judgment (Doc 14); and
2. GRANT Defendant's Motion for Summary Judgment (Doc 16).

Pursuant to 28 U.S.C. § 636(b), any party may file and serve written objections within 10 days after being served with a copy of this Report and Recommendation. *See also* FRCP 72(b), 6(a). If objections to any factual or legal determination of the Magistrate Judge are not timely filed, the party's right to de novo review may be waived. *United States v. Reyna-Tapia*, 328 F.3d 1114, 1121 (9th Cir.2003) (en banc). If objections are timely filed, the parties should direct them to the District Court by using the following case number: CV-07-681-TUC-RCC.

The Clerk of the Court is directed to send a copy of this Report and Recommendation to all parties.

DATED this 6th day of May, 2009.

*[signature]*

CHARLES R. PYLE
UNITED STATES MAGISTRATE JUDGE